## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

VADELL JOHNSON                                                          PETITIONER

v.                                                                   No. 3:20CV239-SA-RP

WARDEN FRANK SHAW                                                     RESPONDENT

### MEMORANDUM OPINION

This matter comes before the court on the petition of Vadell Johnson for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition; Johnson has replied, and the matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

> 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*. Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

### Facts and Procedural Posture[1]

During his second trial,[2] petitioner Vadell Johnson was convicted for murder (Count I), aggravated assault (Count II) and possession of a firearm by a felon (Count IV) in the Circuit Court of Bolivar County, Mississippi. *See* State Court Record (SCR) in Cause No. 2017-KA-010509,[3] Vol. 4 at 356-59.[4] On May 11, 2017, the trial court held a bifurcated sentencing hearing, where the jury sentenced Johnson to serve a term of life in the custody of the Mississippi Department of Corrections (MDOC). SCR, Vol. 1 at 140; Vol. 5 at 366-412. The trial court sentenced Johnson to serve concurrent terms of ten years in the custody of MDOC for

---

[1] The court has drawn the facts and procedural posture from the State's Answer to the instant petition for a writ of *habeas corpus*, as they are both well-documented and undisputed.

[2] Johnson's first trial resulted in a mistrial.

[3] References to the record of Johnson's appeal in Cause No. 2017-KA-010509 appear as SCR with the appropriate volume and page number or other appropriate designation. References to the record in Johnson's post-conviction action appear as SCR, followed by the post-conviction cause number.

[4] The trial court granted the defense's motion for a directed verdict as to another aggravated assault charge in Count III. SCR, Vol. 1 at 145; Vol. 4 at 300.

the aggravated assault conviction and one year for the felon in possession of a firearm

conviction.   SCR, Vol. 5 at 413-15; *see also* SCR Vol. 1 at 144-146 (Sentencing Judgment).

Johnson, through counsel, appealed his convictions and sentences, and the Mississippi

Court of Appeals summarized the facts presented at trial:

> Around 1:00 a.m. on July 1, 2010, a shooting occurred at the Fermier's Club in Cleveland, Mississippi.   Vadell Johnson was later arrested and charged with the murder of Scottie Tutwiler, Jr., the aggravated assault of Damien Story, the aggravated assault of Demonte Cox, and the possession of a firearm by a felon.

> At Johnson's trial, Corvet Robinson testified that she saw Johnson at the club that night.   According to Robinson, Johnson was her cousin, and he asked her to introduce him to the rest of her "kinfolk in case some s[***] kick off … in the club."   Robinson did not know what Johnson meant, but she introduced him to a few people and then went to get a drink from the bar.   As Robinson was walking to the bar, she heard gunshots.   But Robinson did not know if Johnson was the shooter.   After the shooting, Robinson saw Tutwiler outside.   Tutwiler had been shot while he was inside the club, which ultimately caused his death.

> Story was also shot that evening.   Story testified that when he arrived at the club, he spoke with Tutwiler and Cox.   Then Robinson introduced him to Johnson, but Story "really [didn't] pay … him no mind."   He and Johnson spoke "for a minute or so," and then Story walked away.   Story testified that after he finished speaking with Johnson, he was shot in the arm.   When Story turned around to see who shot him, he saw Johnson with a gun in his hand.   According to Story, everyone started running after the gunshot, which caused him to fall.   And then Johnson stood over him and shot him again.

> Story admitted that he could not identify the shooter while he was in the hospital.   But he explained that he was on Morphine and was in a lot of pain at the time.   Story testified that he was shown a photo lineup several days later, and he identified Johnson as the shooter.   At trial, Story also identified Johnson as the shooter.   Although Story did not see Tutwiler get shot, he testified that Johnson was the only person he saw with a gun, and he did not hear any other guns.

> Chief investigator George Serio with the Cleveland Police Department testified that, during the investigation, a witness told him that the shooter had gold teeth.   But he could not recall if Johnson had gold teeth when he was arrested several days after the shooting.   Yet Story testified that Johnson had a "snatch out," or removable grill.

> After the State rested its case in chief, the defense moved for a directed verdict. The trial judge denied the motion as to Counts I, II and IV, but granted the motion as to count III – the aggravated assault of Cox.

> Shawn Palmer, a security guard at Fermier's, testified for the defense. Like Story, Palmer testified that he only heard one gun that night. Law enforcement presented Palmer with a photo line-up after the shooting. Although Palmer was not able to identify the shooter, he was able to identify an individual ("Fitz") who he saw in the area from which the shots were fired.[5] Palmer testified that Fitz had "snatch out gold teeth." But he was not sure if anyone else had gold teeth.
>
> After the defense rested, Johnson renewed his motion for a directed verdict. The trial court denied the motion, and Johnson was convicted of murder, aggravated assault, and possession of a firearm by a felon. The jury unanimously agreed to sentence Johnson to life for his murder conviction. Then the trial judge sentenced Johnson to ten years for his aggravated assault conviction and one year for his felon-in-possession conviction.

*Johnson v. State*, 281 So. 3d 1221, 1223-24 (Miss. Ct. App. 2019) (footnote in original). The

court will reference additional facts developed at trial, as necessary.

On direct appeal, Johnson, through counsel, raised the following issue for the state

appellate court's review:

> Whether the trial court committed reversible error by failing to grant Johnson's motion for a Judgment Notwithstanding the Verdict, or In the Alternative, a New Trial in that the verdict was against the overwhelming weight of the credible evidence and was entirely insufficient to support the verdicts.

SCR, Brief of Appellant. In addition, although not separately listed as an issue in Johnson's

brief, counsel argued what he alleged to be "juror bias or misconduct" based on his contention

that certain jurors on the panel knew the victim, though counsel did not discover that fact until

after the trial had ended. *Id.* On June 18, 2019, the Mississippi Court of Appeals affirmed

Johnson's convictions and sentences. *Johnson v. State,* 281 So. 3d 1221 (Miss. Ct. App. 2019)

(Cause No. 2017-KA-01509).[6] The docket in Johnson's appeal in Cause No. 2017-KA-01509,

---

[5] Johnson's photograph was not included in the lineup.

[6] The Mississippi Court of Appeals discussed Johnson's challenges to the weight and sufficiency of the evidence as to each conviction. *Johnson v. State*, 281 So. 3d at 1225-26. As to Johnson's claim of juror bias or prejudice, the court of appeals noted that because Johnson's claim was raised in an amended motion filed after the notice of appeal, the "circuit court lacked

- 4 -

as posted on the Mississippi Supreme Court's official website, reflects that Johnson's counsel sought and received an extension of time until June 11, 2019, to request rehearing of the court of appeals' decision. *See also* SCR, Case Folder. The docket does not show that counsel or Johnson filed a motion for rehearing within the time allowed, and the mandate of the court issued on June 18, 2019. *See* Exhibit B; *see also* SCR, Case Folder.[7]

On December 18, 2019, Johnson, through counsel, filed in the Mississippi Supreme Court an "Application for Leave to File Motion for Post-Conviction Collateral Relief with the Trial Court of Bolivar County, Mississippi." SCR, Cause No. 2019-M-1861. Johnson raised the following grounds in his post-conviction application (as stated by counsel):

a.  Juror Misconduct.

b.  Discovery Violation.

c.  Denial of Motion for Continuance.

d.  Reversing Petitioner's Peremptory Strikes.

e.  Trial Transcript.

*Id*.

On March 23, 2020, the Mississippi Supreme Court denied Johnson's application for post-conviction relief, finding:

> [Johnson] raises issues regarding juror misconduct, a discovery violation, denial of a motion for continuance, his use of peremptory strikes, and a trial transcript from a previous mistrial. We find the claims are barred and/or fail to present a substantial showing of the denial of a state or federal right. Miss. Code Ann. § 99-39-27(5).

jurisdiction to consider the claims in Johnson's amended motion." *Id.* at 1227. As a result, the appellate court found that there was "nothing in the record to support Johnson's claim of juror bias, which was developed post trial," and noted that "[s]uch a claim is usually the topic of a motion for post-conviction collateral relief." *Id.*

[7] The exhibits referenced in this memorandum opinion may be found attached to the State's Answer to the instant petition for a writ of *habeas corpus*.

- 5 -

Accordingly, the petition should be denied.

*See* Exhibit C.[8]   Johnson filed a motion for reconsideration of the court's order and a request for the state court to appoint counsel for federal *habeas corpus*, which were denied by Order filed March 31, 2020.   *See* Exhibit D; *see also* SCR, Cause No. 2019-M-1861.

On August 19, 2020, Johnson, through new counsel, filed the instant petition (Doc. 1), presenting the following claims for relief:[9]

Ground One:   Juror Misconduct.

Ground Two:  Discovery Violation.

Ground Three: Denial of Motion for Continuance.

Ground Four:  Reversing Petitioner's Peremptory Strikes.

Ground Five:  Trial Transcript.

Ground Six:   Cumulative Error by the Trial Court[10]

---

[8]  Mississippi Code § 99-39-27(5), cited by the court in its Order, states, in relevant part:

(5) Unless it appears from the face of the application, motion, exhibits and the prior record *that the claims presented by those documents are not procedurally barred under Section 99-39-21* and that they further present a substantial showing of the denial of a state or federal right, the court shall by appropriate order deny the application.

*See* Miss. Code Ann. § 99-39-27(5) (emphasis added).

[9]  Johnson's federal *habeas corpus* counsel did not list any specific grounds for relief in the instant petition, but rather argued the claims in continuous paragraph form.   *See* Doc. 1. However, the first twenty-seven pages of the federal petition are essentially verbatim to the post-conviction application filed on Johnson's behalf in state court – with the exception that the headings separating the issues that were contained in the post-conviction pleadings have been removed.   *Id*.   Hence, for ease of reference, the court has used the headings from Johnson's state post-conviction pleading as Grounds One through Five in the instant petition.   The court has also listed a Ground Six based on Johnson's attempt to raise a cumulative error claim.

[10]  Johnson states, without argument, that the trial court's "error hamstrung [Johnson's] attorney and rendered counsel unable to provide effective assistance of counsel as guaranteed by both the Mississippi and the United States Constitutions."   Doc. 1 at 27.   He appears to rely upon two facts to support his contention that the court's rulings undermined counsel's

Doc. 1 at 4-30.   Finally, Johnson argues generally (citing three cases regarding admission or exclusion of evidence) that he has the right to present a defense and that evidentiary rules cannot operate to prevent him from doing so.   *Id.* at 27-30.[11]

### The Doctrine of Procedural Bar

The Mississippi Supreme Court rejected the claims found in Grounds Two, Three, Four, and Five of the instant petition during Johnson's pursuit of post-conviction collateral relief. Exh. C (Order of Miss. Supreme Court denying post-conviction relief in *Johnson v. State*, Cause No. 2019-M-186).   The Mississippi Supreme Court found that all of the claims raised by Johnson (including Ground One) were "barred and/or fail to present a substantial showing of the denial of a state or federal right."[12]   *Id.*   As such, this court may not consider these four claims because they are procedurally barred.   *See Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

Federal courts may not review a *habeas corpus* claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the

---

representation:   the inability to locate two witnesses (Michael Mengarelli and Stig Peterson, police investigators who interviewed the victims) and the inability to create a transcript of the first trial.   Though Johnson couched this claim in terms of ineffective assistance of counsel, the claim, itself, describes cumulative error.

[11] Johnson cites no evidence he claims was wrongfully excluded; nor has he tied the three named cases to an issue for review.   In discussing one of the three cases, Johnson states that the "affidavit of Brown had similar corroborating factors."   Doc. 1 at 28.   The court has not identified an affidavit given by someone with the last name Brown in this case.

[12] As discussed in detail below, Johnson's claim in Ground One alleging juror misconduct was not available until after the trial and was raised on direct appeal – but deferred by the court of appeals for resolution on post-conviction review.   Hence, that claim would not have been procedurally barred on post-conviction review.   The remaining claims raised on post-conviction review are challenges to various rulings by the trial court; as such, the first opportunity for Johnson to have raised them was on direct appeal.   He did not do so; as such, they were precluded from state post-conviction review under the "waiver" bar in Miss. Code Ann. § 99-39-21(1).

merits of the federal claim and an adequate basis for the court's decision." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012). Thus, a federal court may not consider a *habeas corpus* claim when, "(1) a state court [has] declined to address [those] claims because the prisoner [has] failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, ––– U.S. ––––, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012) (alterations in original) (internal quotation marks omitted). This doctrine is known as procedural bar.

A state procedural rule is "independent" when the state law ground for decision is not "interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). A state law ground is interwoven with federal law if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985); *see also* State court decision must not be interwoven with federal law, Federal Habeas Manual § 9B:24.

To determine the adequacy of the state procedural bar, this court must examine whether the state's highest court "has strictly or regularly applied it." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). The petitioner, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" – and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Id*.

### Cause and Prejudice – and Fundamental Miscarriage of Justice – As Ways to Overcome Procedural Bar

When a petitioner's claim is procedurally barred, he may overcome this barrier in two ways. First, he may overcome the procedural bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003).

Even if a petitioner fails to establish cause for his default and prejudice from its application, he may still overcome a procedural bar by showing that application of the bar would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a petitioner must prove that "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). Further, he must support his allegations with new, reliable evidence – that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted).

In the present case, the Mississippi Supreme Court held that Grounds Two, Three, Four, and Five were barred under the "waiver" provision of Miss. Code Ann. § 99-39-21(1).[13] *See* SCR,

---

[13] Mississippi Code Annotated § 99-39-21(1) provides:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be

Cause No. 2019-M-1861. Section 99-39-21(1) is "an independent and adequate state procedural rule." *Stokes v. Anderson*, 123 F.3d 858, 861 (5th Cir. 1997); *see also Nixon v. Epps*, 405 F.3d 318, 323 (5th Cir. 2005). As Johnson has not shown that the Mississippi Supreme Court has applied the § 99-39-21 bar in an "inconsistent and irregular" manner, he has defaulted his claims in Grounds Two, Three, Four, and Five of the instant petition under an independent and adequate state procedural rule. *Stokes, supra*.

Further, Johnson has not shown cause for his failure to raise these issues on direct appeal. He has not shown that something external – which could not be attributed to him – prevented him from raising these issues. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). For example, he has not shown interference by officials or that the factual or legal basis for his claim was not available to him. *McCleskey v. Zant*, 499 U.S. 467 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).[14] Absent a showing of cause, the court need not consider whether there is actual prejudice. *Hughes v. Quarterman*, 530 F.3d 336, 343 (5th Cir. 2008).

To establish prejudice, Johnson would be required to show that, but for the alleged error, the outcome of the proceeding would have been different. *See Pickney v. Cain*, 337 F. 3d 542 (5th Cir. 2003). Johnson has made no showing of prejudice should the court apply the procedural bar. Hence, he has shown neither cause for his failure to bring these claims nor

---

procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

*See* Miss. Code Ann. § 99-39-21(1).

[14] Johnson has not argued that ineffective assistance of counsel was cause for his failure to raise these issues. His sole reference in his petition to counsel's performance was that appellate counsel was "hamstrung" by the fact that the testimony from first trial was never transcribed, and the recording was lost. Doc. 1 at 27. Though *habeas corpus* counsel labeled the claim as "ineffective assistance of counsel," as it involves alleged errors by the trial court (not counsel), it appears, instead, to be a claim of cumulative error. The court will discuss the lack of transcript of the first trial below.

prejudice from application of the bar, and Grounds Two, Three, Four, and Five are procedurally barred from federal *habeas corpus* review.

Neither has Johnson shown that a fundamental miscarriage of justice would occur if the court applied the procedural bar to these claims, as he has not shown that he is actually innocent of the crimes charged. He has not shown that "as a factual matter, … he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 643 (5th Cir. 1999) (citing *Ward*, 53 F.3d at 108). To show that he is actually innocent, the petitioner must support his allegations with new, reliable, evidence that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman*, 188 F.3d at 644 (citations omitted). Johnson has not done so; as such, his claims in Grounds Two, Three, Four, and Five of the instant petition are barred from *habeas corpus* review and will be dismissed with prejudice. *See Moawad v. Anderson*, 143 F.3d 942, 947 (5th Cir. 1998).

### Johnson's Claim in Ground Five Regarding the Inability to Obtain or Create a Transcript

Even if Johnson's claim in Ground Five regarding the lack of a transcript of the first trial was not procedurally barred, the reasoning behind the relief he seeks – a new trial – is flawed. The court reporter from Johnson's first trial died before his second trial – and before she had created a trial transcript. Johnson's counsel was told no transcripts of the first trial could be located – and that the tapes of the proceedings were unusable. There was simply no way to obtain a transcript of the first trial. Johnson wished to use the transcript from the first trial to impeach the testimony of prosecution witness Damien Story, who allegedly testified differently at Johnson's second trial than he did at the first one. Counsel posits that there is no way to

obtain a transcript from the first trial, and there is no suitable alternative for that transcript.    As relief, Johnson seeks a new trial.

The cases Johnson has cited to support his request for a new trial involve lost transcripts that the defendant needed *for direct appeal* – not for a second trial.    The appellate courts recognized that, in order to consider whether error occurred during trial, the court needed an accurate record of the proceedings.    *See, e.g., United States v. Cashwell*, 950 F.2d 699 (11th Cir. 1992); *United States v. Selva*, 546 F.2d 1173 (5th Cir. 1977) [*Selva I*]; and *United States v. Selva*, 559 F.3d 1303 (5th Cir. 1977) [*Selva II*].    These courts relied primarily on the Court Reporter Act (which does not apply in state court matters such as the instant case), but also recognized constitutional concerns for trying to prosecute an appeal without a transcript or a "suitable alternative."    *Cashwell*, 950 F.2d at 703.    In that instance (the absence of a trial transcript or suitable alternative for appeal), a second trial is the only remedy – because the second trial would generate a *new* record, which could be transcribed and provided to the appellate court for review.

In the present case, Johnson's first trial ended in a mistrial; hence, there was no criminal judgment to appeal.    He was then tried a second time and convicted (without the benefit of a transcript of the first trial to impeach Damien Story).    However, the relief he seeks – a new trial – *cannot* cure the defect counsel has identified, as a third trial (and any subsequent trial) would have the same defect.    Counsel *still* could not impeach the witness with contrary testimony from the first trial – because the transcript of that trial *still* does not exist.    This ground for relief is both procedurally barred and without substantive merit.

### Grounds One (Juror Misconduct or Bias ) and Six (Cumulative Error):

As to Johnson's claims in Ground One (juror misconduct or bias) and Ground Six (cumulative error), the Mississippi Supreme Court found that these claims failed to "present a substantial

showing of the denial of a state or federal right." *See* Exhibit C; *see also* SCR, Cause No. 2019-

M-1861. The Mississippi Supreme Court has already considered Grounds One and Six on the

merits and decided those issues against the petitioner; hence, these claims are barred from

*habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. §

2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings *unless* the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in
>> the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law.

*Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies

to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the

petitioner's claims challenge both the application of law and the finding of fact, this court must

consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claims merit *habeas corpus* review if their prior

adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable

application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision

is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United

States Supreme Court on a question of law, or if it decides a case differently from the Supreme

Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120

S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of*

federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Grounds One and Six of instant petition.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Ground One:   Juror Misconduct or Bias

As to Johnson's claim in Ground One regarding juror misconduct or bias, the state court found that the claim failed to "present a substantial showing of the denial of a state or federal right." *See* Exhibit C; *see also* SCR, Cause No. 2019-M-1861. This is true because four of the potential jurors mentioned did not sit on the jury panel. Johnson argues that juror numbers 4, 6, 10, and 11, failed to disclose to the court that they were "either related to, close friends with or Facebook pals with Scottie Tutwiler during voir dire." Doc. 1 at 3. However, Johnson provides virtually no additional argument or evidence to support these bald allegations – except to quote a colloquy where Juror number 6 stated that he or she knew the victim's mother but that

such would not affect him or her at trial.   *Id*. at 6-7.   The state court record reflects that Juror number 10 was released by the trial court for cause.   SCR, Vol. 3 at 114.   Juror number 6 was stricken from the jury venire by the State.   *Id.* at 125.   Juror numbers 4 and 11 were stricken from the jury venire by the defense.   *Id*. at 125-26.   In short, *none* of these four jurors served on Johnson's jury.[15]   Thus, Johnson's claim in Ground One regarding potential bias of jurors 4, 6, 10, and 11 is without substantive merit and is flatly contradicted in the record.

Johnson also contends that Juror Quardricka Thompson, who was chosen as a juror for the trial,[16] failed to respond to the questions during voir dire regarding whether she knew Tutwiler, the deceased victim in this case.   Doc. 1 at 7-8.   According to Johnson, Juror Thompson shared a post on her Facebook page of an original post by someone with the Facebook name Triice Thomas.   *Id*. at 7.[17]   Thomas' original Facebook post mentioned a song or poem with the hashtags #MyCity and "RIP," along with what appeared to be nicknames of "fallen soldiers" before adding additional hashtags seeking likes and shares.   *Id.*   One of the names, among a string of others, was "Tut."   *Id*.   Johnson states that this post was shared by Juror Thompson "[p]rior to the second trial, and after the first trial."   *Id*.   Johnson also contends that Juror Thompson "knew and was friends with" Shericka Brown, who testified for the State during the *first* trial and was merely listed as a *potential* witness during the second trial *but was*

---

[15] The court interprets the juror numbers listed in the federal petition for a writ of *habeas corpus* (and state post-conviction pleadings) to be those of the jury venire, based on counsel's citation to the record with regard to Juror number 6, which was the number assigned to the potential juror during voir dire.

[16] *See* SCR, Vol. 3 at 134.

[17] Although not attached to the federal petition, the application for leave to seek post-conviction relief in state court included a photograph of the alleged Facebook post referenced by counsel.   *See* SCR, Cause No. 2019-M-1861.

*not called to testify*.  *Id*. at 8.   Johnson contends that, had he known the above information, he would not have allowed Thompson to be seated on the jury. *Id.*

"A juror is biased if his views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."   See *Green v. Quarterman,* 213 F. App'x 279, 281 (5th Cir. 2007) (citations omitted).   "Bias may be either actual or implied."   *Id*.   "Actual bias exists when the juror failed to answer a material question honestly on voir dire, and a correct response would have provided a valid basis for a challenge for cause."  *Hatten v. Quarterman,* 570 F.3d 595, 600 (citing *United States v. Bishop,* 264 F.3d 535, 554 (5th Cir. 2001) (citing and applying *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, (1984))).   To demonstrate actual bias, the party must present an "admission or factual proof" of bias.  *Id*. (citing *Bishop,* 264 F.3d at 554)).

Johnson has met neither prong of the test to show actual bias with respect to Juror Thompson.   First, Johnson has not shown that Juror Thompson failed to answer a question honestly in voir dire regarding her relationship with the victim, Tutwiler.   In addition, there is nothing in the record to show that Juror Thompson actually knew the victim.   Johnson's photographs of a Facebook post or posts attached to his state post-conviction pleadings do not establish any friendship or relationship existed between Juror Thompson and the victim.   Rather, the photographs reflect that Juror Thompson merely shared a post initially written and posted by *another* – Triice Thomas – one of Thompson's Facebook friends.   SCR, Cause No. 2019-M-1861.

According to Johnson, the post in question listed the victim by his nickname ("Tut") in a string of initials and nicknames.   However, the shared social media post is simply not an admission – or proof – that Juror Thompson knew the victim or in any way gave a dishonest

- 16 -

answer during voir dire.   Johnson has not presented evidence establishing bias to meet the first

prong of the *McDonough* test.   *Buckner v. Davis*, 945 F.3d 906, 910-11 (5th Cir. 2019).   In

addition, even if Johnson could establish that Juror Thompson failed to provide an honest answer

to a material question, he has not shown that a "truthful response would have provided a valid

basis to challenge the juror for cause."   *Id*.   As such, any claim of actual bias with regard to

Juror Thompson and the victim Tutwiler, must fail.

Likewise, Johnson has not shown that Juror Thompson answered dishonestly during voir

dire regarding a question related to Sherika Brown, the potential witness.   The question posed

during voir dire regarding to Sherika Brown, who was listed as a potential witness, was "[i]s

there anyone here who is related by blood or marriage to Sherika Brown?"   SCR, Vol. 3 at 42

(emphasis supplied).   As Johnson does not allege that Juror Thompson was related by blood or

marriage to Brown, Thompson's decision not to respond was proper.   As such, Johnson has not

shown that Juror Thompson failed to answer a material question honestly during *voir dire*.

Based on the record, Johnson has presented no facts to support his claim that he would

have been able to strike Juror Thompson for cause.   The record reflects that the trial court asked

all jurors on the panel who had not previously indicated they could not be fair or impartial.

SCR, Vol. 3 at 69.   All remaining members of the venire, including Juror Thompson, indicated

that they could.   SCR, Vol. 3 at 69.   Johnson has met neither of the two prongs of the

*McDonough* test regarding his allegations concerning witness Sherika Brown, and any claim of

actual bias is without substantive merit.   *See Bruckner v. Davis*, 945 F. 3d 906, 910-11 (5th Cir.

2019).

Neither has Johnson shown any implied bias with regard to Juror Thompson.   Even if

she knew the victim or knew a witness that testified in the first trial, "[j]uries are presumed to be

- 17 -

impartial, and absent extraordinary circumstances bias should not be imputed to jurors." *Green*, 213 F. App'x at 281.[18]  The Fifth Circuit's decisions rejecting implied bias claims reveal that a juror's "mere acquaintance or association with the [] victim" is insufficient to impute bias. *Hatten,* 570 F.3d at 603 (citing *Andrews v. Collins,* 21 F.3d 612, 620-21 (5th Cir.1994) (no implied bias where juror's daughter had been married to the victim's grandson, who was deceased); *Jones v. Butler,* 864 F.2d 348, 361-62 (5th Cir.1988) (no implied bias where a juror "had lived near the victim[,] knew her by sight, [and] had visited the funeral home to view her body")).  Further, "[a] distant relationship or friendship with the victim, even a close friendship, is not sufficient to imply bias to a juror."  *See Green*, 213 F. App'x at 281 (citing *Ray v. Johnson*, 196 F.3d 1257 (5th Cir. 1999) (citations omitted)); *see also Montoya v. Scott,* 65 F.3d 405, 419–20 (5th Cir.1995) (recognizing an allegation that a juror was acquainted with victim does not alone establish bias sufficient to disqualify juror).  Indeed, "the [Supreme] Court has not looked favorably upon attempts to impute bias to jurors," holding that only "*extreme situations*" would justify such a finding.  *See Solis v. Cockrell*, 342 F.3d 392, 396 (5th Cir. 2003) (citations omitted) (emphasis in original).

---

[18]  The only reference in the record that Juror Thompson knew this potential witness, Shericka Brown, is Johnson's bald assertion.  Further, even assuming that Johnson relies on a photograph attached to his state post-conviction pleadings (allegedly showing Brown and Juror Thompson together), he never provided the photographs to the court.  It appears that the photograph attached to Johnson's post-conviction application was taken from Facebook, but Johnson has not properly identified the subjects in the photograph; nor has he established the photograph's authenticity.  In any event, as will be discussed below, Juror Thompson's and Brown's status as acquaintances or friends does not establish that Thompson should have been stricken for cause.  Further, Johnson has provided nothing to the court to show that a relationship, if any, was significant enough to presume bias.  Finally, Shericka Brown did not testify at the second trial; hence, any alleged relationship between Thompson and Brown could have no effect on the trial's outcome.

Johnson has shown neither actual nor implied bias as to Juror Thompson and, as such, cannot overcome the deference this court must give to the state court's finding: that Johnson's claim failed to present the denial of a state or federal right (including that Johnson had not shown juror bias). *See Bruckner*, 945 F.3d at 909-10. This claim for relief is without substantive merit.

**Ground Six: Cumulative Error**

Though inartfully presented, it appears that Johnson argues that the trial court's erroneous rulings undermined counsel's ability to provide constitutionally adequate representation. Doc. 1 at 27. Johnson couches this claim in terms of the court's rulings leaving counsel unable to "present a defense." *Id*. Johnson refers to the trial court's rulings regarding "the absence of (2) two key witnesses … and the destruction of the first trial transcript" that allegedly left him unable to present his defense.[19] *Id*.

Johnson thus argues that cumulative error by the trial court resulted in a fundamentally unfair trial, which violated his right to due process. Cumulative error can be an independent basis for *habeas corpus* relief, but only when "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for *habeas corpus* purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (*citing Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)). Meritless claims or claims that are not prejudicial cannot be cumulated, no matter the number raised. *Derden*, 978

---

[19] The court has already discussed the lack of a transcript for the first trial (which ended in a mistrial) and will not repeat that discussion. The court reporter died, and the loss of the recording of the proceedings left no way to create a transcript. The trial court's decisions regarding these events do not rise to the level of error, much less constitutional error.

F.2d at 1461.

It appears that the State did not provide updated addresses for Investigators Michael

Mengarelli and Stig Peterson, in violation of Miss. R. Crim. P. 4.06.[20]   Under Mississippi law

> [The] general discovery rule requires that, upon defense request, the prosecution
> disclose the names and addresses of all material witnesses.   The rule extends to
> witnesses who may not be called at trial, where the witness may be reasonably
> expected to be helpful to the defense.

*Gowdy v. State*, 592 So.2d 29, 34 (Miss. 1991).   The defense requested discovery, and the

prosecution did not provide updated addresses for the two Investigators when they left the

Cleveland Police Department.   According to Johnson, these two witnesses would have testified

that the three victims, who were hospitalized at the time, could not identify the person who shot

them – testimony one could reasonably expect to help the defense.   The failure to provide the

addresses and phone numbers may have violated Miss. R. Crim. P. Rule 4.06, and, in some

circumstances, could rise to the level of a *Brady* violation.   *See Brady v. Maryland*, 373 U.S. 83

(1963).

The failure by the prosecution to disclose the name and address of a potential witness

violates a defendant's right to due process "if the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution."   *See Brady, supra*, at

87.   The question becomes:   Was the evidence *material* to Johnson's guilt?   The court finds

that it was not.

---

[20]   According to witness George Serio, who was Chief Investigator with the Cleveland
Police Department at the time of the shooting, Stig Peterson had left the employ of the Cleveland
Police Department and had returned "to his home country of Denmark."   Doc. 8-4 at 151-152.
Thus, it appears that Peterson would have been unavailable to testify as a witness in this case,
even if the prosecution had updated his address.

The Supreme Court has discussed the standard for determining whether evidence not disclosed to the defense was "material":

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*United States v. Bagley*, 473 U.S. 667, 681 (1985).   Johnson states that the two missing witnesses would have established:   (1) Damien Story (one of the gunshot victims) admitted that he could not identify the shooter; and (2) The medication Story had received did not affect his ability to recall the events of the shooting.   Doc. 1 at 15.

The testimony Johnson wished to elicit from these witnesses would not have resulted in a different outcome of the trial, as trial counsel brought out these facts from other witnesses. First, during cross-examination, Mr. Story admitted that, during his first interview at the Bolivar Medical Center (which took place immediately after the shooting) he could not identify the shooter:

> [Counsel]:    Now, at the hospital you were interviewed by men with the Cleveland Police Department – Police Department; is that correct?
>
> [Story]:    (Head nod, affirmative.)
>
> [Counsel]:    Is that correct?
>
> [Story]:    Yeah.
>
> [Counsel]:    And he asked you to tell him what did you see or who shot you; isn't that correct?
>
> [Story]:    Yeah
>
> [Counsel]:    And at the time he spoke to you, you told him you could not identify the person who shot you; isn't that correct?
>
> [Story]:    You just asked me the same question outside the door.
>
> [Counsel]:    I'm asking you again.

[Story]: Yes, I say I couldn't identify; I was on drug; I was on Morphine.   They had me pumped up with drug and I was – I had just got out of surgery.   I was still hurting.

…

[Counsel]:     He asked you whether you could identify the person who shot you twice; isn't that correct?

[Story]:          (Head nod, affirmative.)

[Counsel]:     Isn't that correct?

[Story]:          Yeah.

[Counsel]:     … And you said you could not identify the person who shot you; isn't that correct?

[Story]:          Yes, but sir, I was on drugs.   I was on Morphine and I –

Doc. 8-4 at 129-131.

Further cross-examination elicited testimony from Story contrary to the information he gave to Investigator Mengarelli – and included in his report.   *Id*. at 131-143.   Counsel highlighted other inconsistencies in Story's testimony, as well.   Story, on the one hand, stated that he spoke to Investigator Mengarelli when he had "just got out of surgery" at the Bolivar Medical Center – but also admitted that he did not undergo surgery until later – after he was transported to a hospital in Memphis.   Doc. 8-4 at 130, 143.   Indeed, during cross-examination, Story stated that he could not recall his conversation with Officer Mengarelli because it was "years ago" and that he "had to read the paper to see what [he] really said."   *Id*. at 142.

Part of the testimony counsel wished to obtain from Investigators Mengarelli and Peterson was that the shooting victims initially stated that they could not identify the shooter (as reflected in Investigator Mengarelli's Police Report, Doc. 8-7 at 5).[21]   As set forth above,

---

[21]   During his cross-examination of Damien Story, trial counsel mentioned Investigator Mengarelli's Police Report – and highlighted that Story's statement to investigators differed in many ways from his testimony at trial.   Doc. 84 at 125-144.   Trial counsel did not, however,

counsel, instead, drew that testimony from one of the victims, himself:   Damien Story.[22]

Johnson states that counsel also wished to elicit testimony from Investigators Mengarelli and Peterson that "the alleged medication that [Story] was given did not have any effect on his ability to recall the events of the shooting."   Doc. 1 at 15.   It appears unlikely that counsel could have elicited such information from police investigators, as testimony of that nature (the effect of various drugs on memory) is typically reserved for medical experts.   Indeed, it is doubtful that the police investigators knew what drugs doctors had administered to Story.   At most, Mengarelli and Peterson (if present), could have testified regarding whether Story and the other victims seemed lucid while giving their statements.

Nonetheless, each of the victims had suffered serious gunshot wounds and were transported from the Bolivar Medical Center to The Med in Memphis, Tennessee.   Doc. 8-3 at 3-5, 124.   Scottie Tutwiler died from his wounds, and the other two underwent surgery at The Med, where they remained during recovery.   Doc. 8-3 at 3-6, 124.   All three were seriously injured when they were interviewed, and a jury could well believe Damien Story's testimony that the local hospital gave him medication to ease his pain – and that the medication and trauma together impaired his memory.

Thus, trial counsel elicited testimony from Story to support the facts he sought to prove. The testimony counsel sought from the two investigators would simply have duplicated evidence that the jury heard considered in finding Johnson guilty.[23]   As set forth in the facts laid out by

_____

introduce the police report into evidence for the jury to consider (though he *did* introduce the report in support of his ore tenus motion to continue trial, outside the presence of the jury). Doc. 8-3 at 139-143.

[22]  The other surviving victim, Demonte Cox, did not testify at the second trial.

[23]  As noted above, through oversight or strategy, counsel did not introduce Investigator Mengarelli's Police Report, which would have showed the same thing – that none of the victims

the Mississippi Court of Appeals (quoted above), the prosecution, through other witnesses and documentary evidence, provided the jury with ample proof of Vadell Johnson's guilt.

Ultimately, the information potentially gleaned from these two witnesses was not material, as there is not a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *See United States v. Bagley*, 473 U.S. at 681.   The absence of these witnesses did not give rise to "a probability [of an unjust result] sufficient to undermine confidence in the outcome" of the trial.   *Id*.   This ground for relief is without substantive merit.

**Conclusion**

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied.   A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 8th day of November, 2023.

/s/ Sharion Aycock
U. S. DISTRICT JUDGE

---

could positively identify the shooter while in the hospital in the immediate aftermath of the shooting.   Johnson has not alleged in the instant petition that counsel was ineffective for failing to introduce the report.